The question presented in this appeal is whether a veteran should be required to establish that the government's error was prejudicial, or the government fails in its responsibility to provide adequate notice to a veteran regarding essential details needed to develop his claim. We believe that a veteran should not be required to establish prejudice. Is that what you're advocating be applied across the board, or are you asking for something more than that to be applied across the board? We acknowledge that in the Conway case, and by statute, the Veterans Court is required to take due account of the rule of prejudicial error. And we would agree with Your Honor's statement of the issue, that whether it's viewed as a per se rule with limited exceptions, or whether it's viewed as a presumption under Mayfield 1 that's applied to the rest of the notice requirements as well, you get to the same spot. The bottom line being that the veteran, when the government has fallen down on the job and not provided notice, should not be required to come forth and establish the prejudice. Rather, it should be incumbent on the government to establish a lack of prejudice. And we acknowledge that in our briefs. So I think in a footnote… So in other words, rather than a per se test, would it fairly characterize what you're advocating as presumption of prejudice, rebuttable only under very limited circumstances by the government? Yes, Your Honor. But you're requiring that. You would say that ought to apply to what the error in the notice is. That's correct, Your Honor. And we acknowledge that on page 18 of our blue brief, Your Honor. While we call it a per se test, we acknowledge a couple of situations. For example, in the Vallejo case and in the Mason case. Look, if the government can establish, no matter what the circumstances on further factual development might be, that the veteran is still going to lose his claim, then we agree it would be harmless error. The Vallejo case was an example where a sibling put in for benefits, and the sibling wasn't statutorily entitled to benefits. No need to remand there, even though there was a notice error in the giving of the notice. And the same with the Mason case. Do I understand then that you are correct with the line, that you are comfortable with the line that was drawn in Mayfield? No, Your Honor. We are comfortable with the way the line was drawn in Mayfield, but do not believe it should be limited to what they call element one violations. Just the failure to say what was— The line that was drawn. That is the line that was drawn. We're not comfortable with that, Your Honor. We have an essential problem with any of the notice violations under any of the other factors, be it whether the veteran wasn't told what he was required to submit, whether he wasn't told what the government would be submitting, the timing violations that this court recognized in the Mayfield 2 case that it has to be prior to initial determination. All of those should be presumed to be prejudicial unless the government can show otherwise. They're all failures on the government's part to give proper notice as to some aspect that was necessary for the veteran to adjudicate his claim. I'm just trying to clarify your claim. In other words, are you saying that the test that the Mayfield decision applied to the first element, in other words, when there's no notice at all, ought to be applied to all errors? So you agree with Part 1 of Mayfield, but you think Part 1 ought to be expanded to Parts 2 and 3 of Mayfield? I couldn't have said it better myself, Your Honor. That's what we're asking for. Now, when you say it should be presumed to be prejudicial, are you drawing a distinction between simply where the burden of production or the burden of going forward may lie, or you actually are seeking a presumption of prejudice? I would say it would be fair to characterize it as the burden of going forward to show the lack of prejudice to be on the government. But as the court has acknowledged, the Cody Acos Court from the Supreme Court and the other APA cases cited, the government would have to show that it was clearly harmless error. It's not just kind of an equa-quas kind of situation. They would establish a clear absence of error. What we have here is a situation like in the Wagner case that Judge Mayer was on the panel of, where if you don't have a fully developed record, and you very well might not when there's a notice violation, it's almost impossible to assess the magnitude of the harm. In the Wagner case, when faced with that situation with the secretaries of the army had to pre-bless going forward with removal proceedings, they were left in a state that you were just subjectively speculating as to whether or not the error was harmless. In such a situation, when the government does not give proper notice to the veteran, and there's no way to know for sure whether further development of the record would lead to the veteran being entitled to claims, the proper course is to remand, because you cannot say that that's harmless error. The government responds. I know you make an argument that you can't embellish the administrative record, so there's no way. But the government says, and I think the court may feel indicated in the court's claims, that sure you can. We're just saying on the second, other elements, that you have to plead something. In other words, if you weren't notified, you needed a medical exam. All they're saying is that the appellant has to come forward and say, if I had been notified I needed a medical exam, I would have gotten one. That's all that's required. And if that's the case, why isn't that appropriate? If the appellant would never have gotten a medical exam in any event, why do we have to waste everybody's time and money to go back and look at the results? It's never going to be any different. Well, I'd offer two responses on that. The first is the practical response on behalf of the veteran, and that is, as we all know from reviewing all of these cases and from our experience here, that doing it in the first instance and allowing the veterans court, the board, to see all the evidence in the first instance is a very important aspect of how the procedure works. And moreover, that initial investigation of the evidence often leads to more evidence and more evidence in sort of a discovery type of process. But I'd offer an even more important reason not to do that, and that is, the veterans court is supposed to be a court of appeals. It's supposed to be reviewing what's in the record, not factual proffers of what might have been, which create all sorts of administrative nightmares of a different type, which create all sorts of burdens on the system of a different type. If it's unclear whether or not there would have been further development of a record, if it's unclear whether or not additional evidence might have been sought or might have been obtained that would be helpful, then it shouldn't be for it to be presented for the first time to the veterans court on appeal to say, here's what might have been in a factual proffer or something like that. The proper course of action would be to remand so that we can do what the statute was designed to do in the first place, which is give the veteran a full shake on a full and fair and developed record in the first place to prove entitlement to a claim. The veterans court, like this court, is not supposed to be a court considering extra record type of issues of what might have been. It's supposed to be reviewing the record of what did happen, and the board of veterans appeals is supposed to be making decisions based on a fully developed record. It's the government that's fallen down on the job here with respect to not providing notice. It should be upon the government to either establish conclusively that further notice would have been futile in the situations that we acknowledged in our briefs, or to send it back down and remand for a fully developed record. We understand that sending these cases back down. Look, I saw the number of cases when I got the briefs in this. I was not involved in the briefs, but I saw the number of cases, and obviously it's going to create an administrative burden to send cases back down at this point in time. There's other cases listed there, and we acknowledge that. But there's a different type of burden created by allowing veterans and actually encouraging veterans to start putting in factual proffers of what might have been and having the courts review deal with that. The better structured way and the most efficient way is to have the board make those decisions in the first place. Let me ask you just to move on to just a separate issue. You may or may not know the answer to this, and I plan to ask Mr. Hoppe as well. Is this, because we've got so many other cases that are awaiting decision on this issue, is this just a time blip because of the passage of the VCAA, and so once the backlog gets cleared up, this issue is unlikely to recur, or is this something that's just going to keep pace and always going to be an issue? The best I can do is guess, Your Honor. My day job is a patent lawyer. But what I can tell you is my understanding of it is that the Veterans Claims Act was enacted in 2000, and a lot of the cases that we're seeing as the precedent here have to deal with betweeners, cases that were started before and continued after or something like that, because in those cases proper notice wasn't given. What I'd expect is by and large it would be a blip, but I would defer to those more skilled in veterans law to answer that definitively. I appreciate that. That was my query as to whether this was a blip. I saw it the same as you, and I appreciate it. Some of the factual situations involving the notice cases certainly suggest that. It was a matter of the status of the case at the time that the act was enacted, and that proper notice hadn't been given beforehand because the act wasn't there. The courts decided that it would apply to actions that were already initiated prior to it, and thus were left with a situation where proper notice hadn't been given as an umbrella of the situation. That said, in some of the circumstances, the Pellegrini case was an example that they said what you should do is remand back to the board, give the proper notice, and let's go through the exercise the right way. That's the only efficient way to deal with these cases and the only fair way to deal with the cases because notice is a key aspect of the veterans' right to develop this plan. One thing that's very clear, both from the pre-VCAA cases of this court, the Hodge case, and subsequent to the VCAA, and that is it's supposed to be a pro-claimant system. It's not an adversarial system. The cases that the government relies on to say, here's how the rule of prejudicial error should generally be applied, aren't necessarily applicable in a situation where the veteran relies on the government in a non-adversarial system to develop his claims. And all benefits of all doubts should be given to the veterans when they're putting in for a claim for benefits based on their service to the country. And with that, unless there are further questions, I'd like to reserve the remainder of my time for the rebuttal. Good. Thank you, Mr. Morgan. Mr. Howden. Please, court. I think I'll first respond to the question which your Honor is going to ask me. And it's hard to say, actually, what the effect would be. Certainly, I think counsel is correct in that many of the cases that are listed in the related cases that are pending before this court were cases that had already received the benefit of a regional office final decision at the time that the BCIA was enacted. And so, therefore, there hadn't been an obligation to issue a notice pursuant to 5103, subsection A, as the statute didn't exist. And in many of those cases, well, so, and I don't have the numbers in front of me, but I think that's a sizable number. But the issue hasn't entirely disappeared. There are certainly other cases pending before the court in which notices were issued, in some cases pursuant to remands, as suggested by counsel. And there are still issues with respect to the completeness, if you will, of the notice. Again, in this case, Mr. Sanders' case is limited to a challenge to the Mayfield Court's analysis, as it applies to this case, in respect to what the Mayfield Court described as the second, third, and fourth notice elements of it, which are different than the Simmons case, which we'll talk about next, which talks about the first notice element. So is the government in a position that they're in agreement with the Mayfield test with respect to the second, third, and fourth element? We have not challenged that yet. So the answer is yes. Our overall position is that, pursuant to the statute, and it has relevance, even though it's also related to Simmons, it has relevance to this case because the same arguments apply, although in this case we simply—the arguments support what the Fetcher's court did in the sense that the language of the prejudicial error rule as the legislative history and any comparison between the plain language and the language contained in the APA will reveal was drawn from the Administrative Procedure Act. And Congress specifically says that that was the source of its inspiration for installing— But here's my—I'm sorry to interrupt, but here's my— I was a little confused by the government's brief in terms of exactly what test they were advocating. So it's informative. It's helpful to me that you say you agree with Mayfield. But let me just add— To the extent—yes. To the extent the court applied—essentially, we're talking about burdens here, burdens to go forward, and what we understand the Fetcher's court did in Mayfield and other cases is with respect to the first notice element, the failure to provide a notice of what's required, they imposed a burden—well, they made a determination that that was basically opposed to the substantive right of the claimant, and as a result, there's an inherent prejudice associated with it. But on the second, third, and fourth, just to move on, I mean, you're telling me the government agrees with that. And so I want to ask you, because I was a little confused, it seemed in portions of the government's brief, it seemed to be suggesting that there ought to be an outcome-determinative test of why, which I don't think is what Mayfield requires for the bottom three elements. And so I just want to be clear that the government is not advocating that the appellant has to come in and show any kind of outcome-determinativeness under the prong that it affected the essential fairness in the adjudication. Yes. I just want to be clear. In this case, there is a sort of overlap in the sense that you have, of course, decisions in this court which talk about injury to a substantive right. And so the question, like I think this court said in ATD, in some cases, what's the difference between something being an injury to a substantive right, sort of being provided by a particular statute, and establishing an outcome-determinative situation? I read Mayfield as suggesting that based upon the record, with respect to the second, third, and fourth notice errors, they determined, they do say, yes, that those type of errors to them don't amount to a deprivation of a substantive right. And looking at the case as a whole, given the way the process works, with numerous communications that take place over time, the claimant should be in a position to identify and establish how he would have been damaged by, for example, untimely receipt of notice. So, I don't know if that addresses it. No, it doesn't, I'm afraid. Okay, in Mayfield, Mayfield uses the language, they have the appellant, it puts the burden on the appellant for the second, third, and fourth elements to show how the lack of notice affected the essential fairness of the adjudication. But having read Mayfield, I didn't read the Court of Veterans Claims language in this regard to require at all an outcome-determinative test. That how the essential fairness is, if I had been told I needed a medical exam, I would have gotten it. They don't have to prove that the medical exam would have shown whatever. And that's why I was kind of troubled by the government's brief, because I thought the government seemed to try, subtly or not so subtly, to expand what I read as the Court of Veterans Claims test. Well, the question of whether or not the individual was notified that they had to get an exam, I think that sounds to me more like an element one type, not an exam, because actually, stepping back, I mean, that's kind of an odd situation, because they're not really entitled under the regulations or statutes for an exam. But, for example, they weren't told that they needed a particular type of evidence, and they had evidence of that, maybe in the form of an exam, which they had in their possession. That seems to be more of an element one situation, whereas if they weren't told in time, in other words, it didn't come up until later on that they were said, well, do you have any evidence? And the individual at that point, you know, either did or did not have, you know, they received a notice, and there's just questions about aspects of the notice that need to be. And in that sense, I think the Veterans Court of Mayfield was simply saying, given the type of error at issue with respect to these second, third, and fourth notice errors, as well as the way that the process is designed to work overall for both the regional office and the board and the multiple opportunities to develop the record, that the, and I think that they've said, if not in Mayfield, certainly in subsequent cases applying Mayfield, the issue is whether they had basically a full right to participate in the development of their claim. And they find in applying these, having the burden put on the veteran claimant to show how were you deprived of your right to participate in the development of your claim when in fact you did actually, did eventually receive the notice, and you had an opportunity to provide something, and you didn't provide it, and now you're coming forward and saying, but I was prejudiced. So in that sense, the fundamental fairness is an opportunity to participate in the development of the claim. There's something very curious to me about all of this, this satellite litigation that we engage in to decide whether the veteran is entitled to litigate at all. And it seems to me that after the statute was enacted, there was a period of, I'd call it euphoria, where the VA was coming forward when there were questions as to whether in fact the veteran's claim had been appropriately developed. For whatever reasons, the lines that were drawn in Mayfield weren't drawn. It looked as if the veteran could benefit from a little bit of help. And the case was on appeal. It was a joint motion withdrawal, whether the appeal was before us or whether it was before the Veterans Court, so that that could happen. Now apparently, that isn't happening. There was a line drawn in Mayfield, and I was just wondering, I didn't think of it at the time, is that what's responsible for the hundred odd cases that are backed up now waiting so that the VA can know whether it is or isn't obliged as a matter of law to provide certain kinds of assistance? What I'll say is this, Judge Leeman, no, I don't believe the line has changed. I think what we're doing is focusing on those cases in which the VA has, from our perspective, a fully developed record and very strong persuasive reasons based upon the individual facts in each case of why Leeman is not appropriate in those situations. For example, in this situation, arguably one of the arguments is that Mr. Sanders wasn't informed that he was required to provide evidence linking an injury to a present disability. Yet the record shows that he not only supplied to a VA in a private medical exam as part of the claim process, but was provided two additional examinations by the VA. And so this is not a situation from our perspective in which the record in any means can demonstrate that the veteran claimant was deprived of an opportunity to fully participate in the development of his claim. Now, I will say there were, when the BCAA came down, there were cases in which it wasn't clear to the VA. Yes, we did move jointly with claimants to remand cases which we felt, based upon those records, didn't need further development. What we have left are those cases which we think, and even more so with Simmons, which we'll discuss later, those records demonstrate that the individuals knew exactly what it was that they needed to do to prevail, and they didn't prevail. And what's happened is there's arguments being taken with presumption, especially in the first notice element, because obviously here we're defending the decision in which the court denied Mr. Sanders' request for relief. But with respect to the other case, there are valid reasons within the records of those cases which we think support a finding, or at least support the finding that the prejudicial error rule applied correctly. And as we submit, we think that the burden must fall upon the party attacking the final decision. And we point, as we do in our brief, to the legislative history supporting the act, which we think is very clear the cases cited in that legislative history, which although not referenced precisely for the point in the legislative history, but the same case specifically, places the burden upon the account. And we find that the distinctions made by Veterans Court in Mayfield, followed by Klein Mayfield in these cases, and its reliance upon the criminal case Kodiakos and the quasi-criminal case, the previous case O'Neill, don't merit this court's ignoring what we think is very, very strong language from Congress suggesting that the burden should be, like the APA and like this court has held in Chicago in reviewing the APA-type matter, placed upon the party challenging the errors. We think that the Veterans Court got it right in this case as far as the second, third, and fourth type elements go. And later on we'll talk about why we think it got it wrong with respect, well, for the same reasons. They got it right, we think they should have gotten it right with respect to the first one, but for some reason, well, not for some reason, they explained that they thought they developed basically a distinction between types of errors, which we don't think is relevant. Is it clear that under, perhaps in this case under Sanders, if we were to conclude that only the rule in element one applies here, that Mr. Sanders prevails in the case of the three mandates? No, no. Is there still an issue? There was a, no, the court in this case found that he received notice. The question was that with respect to the second thing. Right, if they were to apply the test, I mean what the other side is advocating, so you should apply rebuttable presumption, but that under Mayfield, even for element one, the government can still come in and rebut that. So my question is, if we were to agree with them that the law is that the presumption of element one should apply in this case as well, does that end the case, or is it the government's view that it should still have the opportunity to rebut that? Well, I think, no, it doesn't end the case in this sense because Right, the decision would have to go back to the Veterans Court with the new burden associated with the issues that it was presenting. Right now, the Veterans Court, based upon the Mayfield burdens, has determined that Mr. Sanders did not meet that burden. So if this court were to turn around and say, no, the burden shouldn't have been placed on Mr. Sanders in the first place, then it would have to go back to the Veterans Court for a determination as to whether the government could meet that burden in the first place. So there would be further litigation. It really wasn't clear what relief, what remedy is being requested. One can read the brief, the appellate's brief, as saying that assuming, if in fact we find and agree that there were burdens on the government which they didn't meet, then the presumptions in favor of the veteran fall into place and the veteran prevails on the merits. No, see, right now you have a situation, Your Honor, in which the Veterans Court has, in trying to determine whether error prejudiced the claimant in this case, placed a burden upon the claimant to come forward in the first instance to not only identify the error, which I don't think anybody disputes, but to establish a prejudice. So that was a legal standard that was applied in this case. To the extent that this court changes that legal standard, there can be no finding by this court that Mr. Sanders prevails. Because you've changed the whole framework of the analysis, you need to send it back to the Veterans Court in that instance for the Veterans Court to apply it to this case, only have the government come forward as an initial manner to try to demonstrate the timing error in this case prejudiced Mr. Sanders. Or did not prejudice, I'm sorry, thank you, Your Honor. Did not prejudice Mr. Sanders. But, I mean, our position is that, no, burdens were properly assigned in this case. As we indicated, when you really get into the facts of these cases, and this court, of course, doesn't do that, but when you get into the facts of these cases, there's a reason why we've appealed them. These are fully, these were developed cases. These were already the recipient of RO decisions. Some of them going back a long time. And the record shows that a significant amount of development took place. And to put a burden upon the Veterans Court, or excuse me, upon the VA to try to identify why someone, prove a negative essentially, why a person was not, or why a person was prejudiced by the VA's value, is difficult given, I mean, in this case, the Veterans Court got it right as far as the burdens, second, third, and fourth element type burdens. Given the fully developed record that is in these cases, the Veteran should be required to come forth and explain why, after, in this case, providing, the Veteran providing the two medical exams and obtaining two more from the VA. Well, no, that's this case, too, though. Why the Veteran should not be required to establish how he was prejudiced. Okay. Thank you, Mr. Hawkins. Mr. Mueller. Thank you, Your Honor. With due respect, it seems like there's a little bit of circular logic here because Your Honor asks the question, what's going on here and why are we finding all these cases here in the posture that they are? The government's response is that these cases involve fully developed records. Well, under the rubric that we've been talking about, that Judge Post and I have had a dialogue about and that we've all talked about here, then let it be on them to establish that there's a fully developed record and no prejudice. What we have here is something that is undisputedly a pro-claiming, paternalistic system where the government has a responsibility to give notice to the Veterans of certain things. You can't render those superfluous, though, by law, and as the Court recognized in Mayfield II, they're important. You can't render them superfluous by other communications that might have happened thereafter. Those are also the government's requirements, but the notice provision is still the law and they're required to do that to help develop the claims. When the government's fallen down on its job, there's nothing wrong and there's nothing contrary to law with making the government, who fell down on the job in the first place, establish that it was harmless error. Now, with respect to the APA discussion that opposing counsel had, it's not supposed to be opposing, it's a veteran's system, but that he had with respect to those APA cases, he cited the inter-cargo case and says, this shows where the burden should lie. But in citing that case, it points out the distinctions between the cases the government's relying on in this case. The inter-cargo case, on which the government relies heavily in its briefs in an argument, involved a situation where the custom service did an extension of time for liquidation and they had the right to do so unilaterally and the only technical deficiency in the notice was that they didn't identify a proper reason for the extension. But they had the unilateral right to do the extension and it turned out it was proper. So in that circumstance, of course there's harmless error. It wasn't a situation where notice was being relied on to develop the claim in the first place. The other cases cited by the government are for a similar result. They cite the Ellings case predominantly in their briefs. In that case, it was an IRS case and they gave notice to a taxpayer. The law said they had to give a date certain for a petition to be filed, let's say April 5th. The notice had a date and it said you have to file within 90 days, but it didn't have the actual date of April 5th in there. And the claimant filed on time. Of course that's harmless error. The fact that it's a notice case, quote-unquote, and that it's in the APA doesn't mean that anything resembles the situation here, which is a paternalistic system that's supposed to be assisting the veteran in developing the claims. Look, there's nothing wrong with the concept of using harmless error appropriately and to reduce administrative burdens, but letting the government come forth with what Mr. Hockney says is a prevalent theme of all the cases that are up on appeal now, which is that they can establish that a full record was developed or that they can establish that there's no harm. If they can do that clearly, then that falls into the category of cases in our briefs that we say shouldn't be remanded. But otherwise, and you're honored to answer your question, all we're asking for here is remand to determine this based on the proper analysis, which is if the government can prove that Mr. Sanders, the error made with his notice, which there's no dispute there was error, was harmless, then no further proceedings are going to be necessary, but it should be on the government to show. One last thing to address Judge Perce's question about Mayfield, because I don't know if you got the full answer on the outcome determinative aspect. I think what Mayfield said, which is right, is if you could show definitively that the outcome would have been the same, then it's harmless. That's true. We agree with that. That's the Vallejo case, the Mason case. That's true. But that you don't have to show that the outcome would have been different necessarily to show that it was harmful. That's when we go back to the Kodiakos case and the idea that if you can't establish harmlessness, then the rule is it's not harmless error, and we've got to go back and we've got to do it the right way. Thank you very much. Thank you, Mr. Martin. Mr. Martin, this case is taken into submission. We will turn to the next question.